UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------ X

**GERARD A. MCHALE, JR., not
individually but solely in his capacity as
Chapter 11 trustee for THE 1031 TAX
GROUP, LLC,** *et al.,*

               **Plaintiff,**

          - against -

**CITIBANK, N.A.,**

              **Defendant.**

------------------------------------------------------ X

**OPINION AND ORDER**

**09 Civ. 6064 (SAS)**

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/24/09
```

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.      INTRODUCTION

Gerard A. Hale, Jr., in his capacity as Trustee for The 1031 Tax

Group, LLC ("The 1031 Tax Group") brings this adversary proceeding in

bankruptcy court in the Southern District of New York alleging the claim of aiding

and abetting breach of fiduciary duty against Citibank, N.A. ("Citibank") for its

alleged participation in a fraudulent scheme that led to substantial losses by

debtors who have since filed for bankruptcy (the "1031 Debtors").  Citibank

moves to withdraw the reference to the bankruptcy court and transfer the action to

1

the Northern District of California, where the Judicial Panel on Multi-district

Litigation ("JPML") has centralized the class action lawsuits relating to this

matter.  For the reasons that follow, Citibank's motions are denied.

## II.    BACKGROUND

### A.    Facts

#### 1.    Okun's Scheme

Section 1031 of the Internal Revenue Code ("IRC") provides that

investment property owners may defer capital gains tax that would otherwise be

due and owing upon sale if the owner (the "Exchanger") directs the sale proceeds

to the purchase of an identified replacement investment property (a "1031

Exchange").[1]  In order to preserve the tax benefit, the Exchanger may not take

possession of the sales proceeds.[2]  Thus, Exchangers often deposit their proceeds

with a qualified intermediary ("QI"), which the IRC provides can be used as a

"safe harbor" that will "result in a determination that the taxpayer is not in actual

or constructive receipt of money or other property for purposes of Section 1031."[3]

---

[1]      *See* Complaint ("Compl.") ¶ 15.

[2]      *See id.* ¶ 16.

[3]      *Id.* ¶ 17.

2

The 1031 Debtors are entities that acted as QIs providing custodial services to the Exchangers.[4]

Between August 2005 and December 2006, Edward H. Okun or entities owned by him purchased control of the 1031 Debtors.[5] The 1031 Debtors eventually became wholly-owned or indirect subsidiaries of The 1031 Tax Group, another Okun-related entity.[6] The responsibilities and duties of the 1031 Debtors are contained in a contract between the 1031 Debtor and the Exchanger ("Exchange Agreement").[7] Although the Exchange Agreements differed, each agreement provided that the deposits ("Exchange Deposits") were to be held for the purpose of effectuating the 1031 Exchanges, and also made promises regarding the safekeeping of such deposits.[8]

From August 2005 to April 2007, Okun and others acting in concert with him misappropriated the funds belonging to the 1031 Debtors.[9] Upon

---

4   *See id.* ¶ 18.

5   *See id.* ¶ 19.

6   *See id.*

7   *See id.* ¶ 20.

8   *See id.*

9   *See id.* ¶ 22.

3

acquiring a new QI, Okun would transfer some or all of the Exchange Deposits held by the QI to personal or business accounts controlled by Okun or other officials of his companies in violation of their contractual and fiduciary duties.[10] Okun used such funds, among other things

> (i) to fund Okun's lavish lifestyle, including acquiring residential properties and luxury assets, (ii) to pay monies and bonuses to other participants in the wrongdoing, (iii) to invest for Okun or entities related to him [] in commercial real estate, (iv) to acquire QIs and other companies, (v) to pay off lenders who provided loans secured by residential and commercial properties owned by Okun or related entities [], (vi) to pay operating expenses for Okun's various companies and (vii) to make 'lulling' payments [] and otherwise conceal the wrongdoing.[11]

Okun would also leverage the properties in order to secure additional funds, which would also be used for the same purposes.[12]

### 2.    Citibank's Relationship with the 1031 Debtors

Citibank was used by one of the 1031 Debtors, SOS, for its banking needs.[13] SOS also developed a joint marketing relationship with Citibank.[14] Todd

---

[10]    *See id.*

[11]    *Id.* ¶  23.

[12]    *See id.* ¶ 24.

[13]    *See id.* ¶ 35.

[14]    *See id.*

4

Pajonas, the owner of SOS prior to and president of SOS after Okun's acquisition of the entity, built close relationships with Citibank employees Joe Curran, Tom Linehan, and Jay McGetrick, who worked in the Business Banking Division of Citibank in Harrison, New York.[15] Together, they would organize and sponsor seminars and presentations for the purpose of attracting clients to both the 1031 Debtor and to Citibank.[16] Through these efforts, Citibank gained knowledge and familiarity with SOS's business and its obligations with respect to the safekeeping of the Exchange Deposits.[17]

In November 2005, the Citibank employees met with Okun himself and were informed by him of his plan to acquire QIs for the purpose of borrowing the Exchange Deposits to acquire real estate.[18] During a meeting in September 2006 with Curran, Linehan, and McGetrick, at which the Citibank employees expressed concern about the relatively low average daily balances SOS would keep in its accounts, Pajonas also informed them that Okun had borrowed portions

---

[15]     *See id.*

[16]     *See id.* ¶ 37.

[17]     *See id.* ¶¶ 41, 42.

[18]     *See id.* ¶ 48.

of the Exchange Deposits for the purpose of purchasing real estate.[19]  Pajonas

offered to send them a legal memo that Okun claimed explained that the

transactions were legal.[20]  On October 9, 2006, Pajonas received a copy of the

legal memo from the 1031 Debtors' legal counsel, which opined that the

investment of Exchange Deposits must be consistent with the purposes of the 1031

exchanges.[21]  Pajonas thereafter informed the Citibank employees that he was

leaving SOS and warned them of the illegality of Okun's transactions.[22]

Despite Pajonas' warning and further advice that Okun was using the

funds for his personal consumption in addition to purchasing real estate, Citibank

continued to build its relationship with Okun by allowing him to transfer money

out of the accounts, opening new accounts for other 1031 Debtors, and hosting

more seminars and parties for the purpose of fostering their relationship and

promoting their businesses.[23]  On April 10, 2007, Citibank informed the 1031

Debtors of its intention to close their accounts, stating that it was "'uncomfortable

---

[19]    *See id.* ¶ 46

[20]    *See id.* ¶ 49.

[21]    *See id.* ¶ 50.

[22]    *See id.* ¶ 51.

[23]    *See id.* ¶¶ 52-59.

with continuing our relationship.'"[24]  Nevertheless, instead of closing the accounts

immediately, Citibank requested that Okun close the accounts by April 27, 2007,

thereby allowing Okun seventeen additional days to continue to make wire

transfers through the bank for the purpose of continuing his illegal enterprise.[25]

### B.    Procedural History

On May 14 and June 11, 2007, each of the 1031 Debtors filed

voluntary petitions for relief in the United States Bankruptcy Court for the

Southern District of New York under chapter 11 of Title 11 of the United States

Code.[26]  As of May 14, 2007, the 1031 Debtors were liable for more than $150

million based on more than three hundred Exchange Agreements.[27]

On March 17, 2008, Okun was indicted by a United States grand jury

in the Eastern District of Virginia for committing mail fraud, among other

charges.[28]  On March 19, 2009, he was convicted of all 23 counts in the

---

[24]    *Id.* ¶ 60 (quoting 4/10/07 Citibank Letter to 1031 Debtors).

[25]    *See id.*

[26]    *See id.* ¶¶ 10, 13.

[27]    *See id.* ¶ 25.

[28]    *See id.* ¶ 26.

Indictment.[29]  The grand jury also charged other members of the scheme with participating in the same misconduct, and all of them pled guilty.[30]

In early 2009, with the support of the Trustee, plaintiffs in class actions that had been filed in Massachusetts and California petitioned the JPML for centralization of those actions in the Northern District of California pursuant to section 1407 of Title 28 of the United States Code.[31]  Defendants, which did not include Citibank at the time, opposed centralization; or, in the alternative, supported centralization in the Southern District of New York where the bankruptcy proceedings were pending.[32]  On April 15, 2009, the JPML granted the petition for centralization in the Northern District of California and assigned the cases to Judge James Ware.[33]

On May 12, 2009, plaintiffs filed another class action, *Hunter v. Citibank, N.A.*, No. 09 C 2079 (N.D. Cal.) (the "Hunter Class Action"), against

---

[29]     *See id.*

[30]     *See id.*

[31]     *See* 4/15/09 JPML Transfer Order, Ex. B to Declaration of Mark B. Blocker, Citibank's counsel ("Blocker Decl."), at 1.

[32]     *See id.*

[33]     *See id.* at 2.

8

Citibank and other banks, lenders, and law firms.[34]  Plaintiffs alleged claims – on

behalf of themselves and other Exchangers – of conversion, aiding a conversion,

aiding and abetting breach of fiduciary duty, aiding and abetting fraud,

interference with contract, and negligence against Citibank.[35]  The Hunter Class

Action was subsequently transferred to Judge Ware.[36]

On June 22, 2009, Judge Ware held a conference with respect to the

preliminary approval of certain settlements in related cases.[37]  It was also at this

conference that he approved a Sharing Agreement between the Trustee and the

Class Representatives in the class action suits in which they had agreed to

coordinate litigation efforts and jointly pursue claims and causes of action.[38]  The

---

[34]     *See* Hunter Class Action Complaint, Ex. C to Blocker Decl.

[35]     *See id.* ¶¶ 234-239, 242-247, 251-253, 258-260.

[36]     *See* Transcript of 6/22/09 Conference Before Judge Ware, Ex. E to Blocker Decl. ("6/22/09 Conf. Tr."), at 8:10-17 (counsel informing Judge Ware that the *Hunter v. Citibank* action was filed as a related case and was subsequently assigned to him).

[37]     *See id.*

[38]     *See id.* at 43:20-22; Order Granting Preliminary Approval of the Wave I Settlement Agreements in *Hunter v. Okun*, 07 Civ. 2795.

June 22, 2009 conference appears to be the first conference that Judge Ware has held on the actions.[39] No scheduling order has been entered in the class actions.[40]

On May 13, 2009, the Trustee commenced the instant adversary proceeding in the bankruptcy court of the Southern District of New York alleging aiding and abetting breach of fiduciary duty against Citibank.[41] Importantly, the Trustee had previously instituted four other adversary proceedings, most of which are against other banks, in the same court.[42] Judge Martin Glenn, who presided over The 1031 Tax Group's bankruptcy petition is also currently presiding over the other four adversary proceedings.[43] According to the briefing schedule set by Judge Glenn in this adversary proceeding, Citibank's motion to dismiss is scheduled to be fully briefed on September 2, 2009, and oral argument on the

---

[39]     *See* Docket of *Hunter v. Okun, et al.*, 07 Civ. 2795. *See also* 6/22/09 Conf. Tr. at 5:16-22 (Judge Ware noting that the actions had been designated as a multi-district litigation and stating that he was unaware of the status of the litigation).

[40]     *See* Docket of *Hunter v. Okun, et al.*, 07 Civ. 2795.

[41]     *See* Compl. ¶¶ 64-70.

[42]     These actions are *McHale, as Trustee v. Wachovia Bank, NA, et al.* (Adv. Pro. No. 08-01604); *McHale, as Trustee v. JPS NH LLC, et al.* (Adv. Pro. No. 08-01402); *McHale, as Trustee v. Boulder Capital LLC, et al.* (Adv. Pro. No. 09-01129); and *McHale, as Trustee v. Alvarez, et al.* (Adv. Pro. No. 08-012644).

[43]     *See* Docket of *McHale, as Trustee v. Citibank, N.A.*, Adv. Pro. No. 09-01218).

motion is scheduled for September 10, 2009.[44]  The Order also provides that fact discovery is to be completed by November 16, 2009, and the parties are to engage in court-ordered mediation.[45]  Citibank now moves to withdraw the reference to the bankruptcy court and transfer the action to the Northern District of California.

## III.   LEGAL STANDARD

### A.    Motion to Withdraw the Reference

Withdrawal of the reference to a bankruptcy court is governed by section 157(d) of Title 28 of the United States Code, which provides: "The district court may withdraw, in whole or in part, any case or proceeding referred under this Section, on its own motion or on timely motion of any party, for cause shown." The Second Circuit has held that a district court should consider a number of factors when deciding whether cause is shown, such as "whether the claim or proceeding is core or non-core, whether it is legal or equitable, and considerations of efficiency, prevention of forum shopping, and uniformity in the administration of bankruptcy law."[46]  "The initial inquiry in evaluating a request for permissive

---

[44]     *See* 7/31/09 Amended Scheduling Stipulation and Order in Adv. Pro. No. 09-01218 ¶¶ 2, 3.

[45]     *See* 6/23/09 Scheduling Order in Adv. Pro. No. 09-01218 ¶¶ 3, 7.

[46]     *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993). *Accord South St. Seaport Ltd. P'ship v. Burger Boys (In re Burger Boys)*, 94 F.3d 755,

withdrawal is whether the claim is core or non-core, and after the court makes that determination 'it should weigh questions of efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors.'"[47] "While the core/non-core inquiry is important, no one factor is dispositive."[48]

### 1. Core and Non-Core Proceedings

Section 157(b)(2) provides a non-exhaustive list of core proceedings, such as "matters concerning the administration of the estate," "counterclaims by the estate against persons filing claims against the estate," and "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims." "'Proceedings can be core by virtue of their nature if either (1) the type of proceeding is unique to or uniquely affected by the

---

762 (2d Cir. 1996).

[47]     *In re G.M. Crocetti, Inc.*, No. 08 Civ. 6239, 2008 WL 4601278, at *2 (S.D.N.Y. Oct. 15, 2008) (quoting *In re Orion*, 4 F.3d at 1101).

[48]     *Id.* (citing *Northwest Airlines, Inc. v. City of Los Angeles*, 384 B.R. 51, 56 (S.D.N.Y. 2008)). *Accord In re Burger Boys*, 94 F.3d at 762 (finding no error in district court's withdrawal of the reference even though the issue was "plainly a core bankruptcy matter" where such withdrawal enhanced judicial economy, did not delay the parties, and did not present concerns of forum shopping).

12

bankruptcy proceedings, . . . or (2) the proceedings directly affect a core

bankruptcy function.'"[49]  Although a bankruptcy court may hear a non-core

proceeding, it must "submit proposed findings of fact and conclusions of law to

the district court, and any final order or judgment shall be entered by the district

judge after considering the bankruptcy judge's proposed findings and conclusions

and after reviewing de novo those matters to which any party has timely and

specifically objected."[50]

### 2.    Legal and Equitable

Whether a dispute is legal or equitable in nature and consequently

whether the litigants are afforded the right to a jury trial is another consideration in

determining whether the reference should be withdrawn.[51]  The Second Circuit has

held that "the constitution prohibits bankruptcy courts from holding jury trials in

non-core matters."[52]  Even if the proceeding is determined to be core in nature and

---

[49]     *In re Petrie Retail, Inc.*, 304 F.3d 223, 229 (2d Cir. 2002) (quoting *United States Lines, Inc. v. American Steamship Owners Mut. Protection and Indem. Ass'n, Inc.*, 197 F.3d 631, 637 (2d Cir. 1999)).

[50]     28 U.S.C. § 157(c)(1).  *See also United States Lines*, 197 F.3d at 636.

[51]     *See McCord v. Papantoniou*, 316 B.R. 113, 122 (E.D.N.Y. 2004) ("[W]hether a litigant is entitled to a jury trial depends on the nature of the dispute, i.e., whether the claims asserted are legal or equitable.").

[52]     *In re Orion Pictures Corp.*, 4 F.3d at 1101.

13

a jury trial is demanded, section 157(e) provides that a bankruptcy court may conduct a jury trial if "specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties."[53]  Thus, a bankruptcy court cannot provide complete adjudication of a matter that is non-core and in which any party declines to consent to a jury trial by the bankruptcy court.

### 3.    Other Considerations

Nevertheless, a motion for withdrawal of the reference will not be granted simply because of a party's demand for a jury trial without consideration of how far the litigation has progressed, because such decision would run counter to the court's interest in judicial economy.[54]  In determining whether the reference should be withdrawn, courts have also looked to a bankruptcy court's familiarity with the litigation, whether the bankruptcy court will offer a swift resolution of the

---

[53]    28 U.S.C. § 157(e).

[54]    *See In re Enron Power Mktg., Inc.*, No. 01 Civ.7964, 2003 WL 68036, at *10 (S.D.N.Y. Jan. 8, 2003) ("A rule that would require a district court to withdraw a reference simply because a party is entitled to a jury trial, regardless of how far along toward trial a case may be, runs counter to the policy favoring judicial economy that underlies the statutory scheme governing the relationship between the district courts and bankruptcy courts.") (quotations omitted). *See also McCord*, 316 B.R. at 125 ("Courts routinely deny motions to withdraw reference despite a litigant's refusal to consent to a jury trial in bankruptcy court because of prevailing concerns about judicial economy.").

issues,[55] and whether the withdrawal will lead to delays or increased costs for the parties.[56] Finally, courts consider whether granting the motion will prevent forum shopping and whether the claims alleged in the action turn on bankruptcy law such that it will affect uniformity in the administration of bankruptcy law.[57]

## B.   Motion to Transfer

Transfer of venue is governed by section 1404(a) of Title 28 of the United States Code with respect to non-core proceedings and section 1412 of Title 28 of the United States Code with respect to core proceedings.[58]  Section 1404(a) provides: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district court or division where it might have been brought."  Section 1412 similarly provides:

---

[55]    *See In re Wedtech Corp.*, 94 B.R. 293, 296 (S.D.N.Y. 1988) (refusing to withdraw reference at pre-trial stage where bankruptcy judge was familiar with the present action; to do so "would defy logic, and be a gratuitous and unnecessary waste of judicial resources," whereas leaving the reference undisturbed presented a "unique and compelling opportunity to promote judicial economy and swift resolution, to the benefit of both parties").

[56]    *See In re Burger Boys, Inc.*, 94 F.3d at 762.

[57]    *See Solutia Inc. v. FMC Corp.*, No. 04 Civ. 2842, 2004 WL 1661115, at *4 (S.D.N.Y. July 27, 2004).

[58]    *See Northwest Airlines*, 384 B.R. at 60 n.1.

15

"A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." "The decision to transfer venue is within the discretion of the court based on 'an individualized, case-by-case consideration of convenience and fairness.'"[59] "However, the party seeking venue transfer bears the significant burden of making a clear and convincing showing that a matter should be transferred."[60]

The same factors are considered by district courts in determining whether to grant a motion for transfer under section 1404(a) or 1412.[61] These factors are "'(1) the plaintiff's choice of forum; (2) the locus of the operative facts; (3) the location, convenience and relative means of the parties; (4) the convenience of witnesses; (5) the availability of process to compel the attendance of witnesses; (6) the location of physical evidence; (7) the relative familiarity of

---

[59]   *Id.* at 60 (quoting *Gulf States Exploration Co. v. Manville Forest Prods. Corp.*, 896 F.2d 1384, 1391 (2d Cir. 1990)).

[60]   *Id.* (internal quotation marks omitted).

[61]   *See Official Comm. of Asbestos Claimants of G-I Holding, Inc. v. Heyman*, 306 B.R. 746, 749 (S.D.N.Y. 2004) (citing *In re McCrory Corp.*, 160 B.R. 502, 507 n.2 (S.D.N.Y. 1993)).

[the] court with the applicable law; and (8) the interests of justice, including the interests of trial efficiency.'"[62]

## IV.  DISCUSSION

### A.  Motion to Withdraw the Reference

The *Orion* factors weigh in favor of maintaining the adversary proceeding with the bankruptcy court.  Although the Trustee has agreed for the purposes of this motion that the proceeding is non-core in nature[63] and Citibank has informed the Court that it will not consent to a jury trial before the bankruptcy court[64] – thereby requiring the participation of a district court for the full and complete adjudication of the matter – these factors alone are not dispositive.  Indeed, several district courts in this Circuit have declined to determine whether the proceeding that is the subject of a withdrawal motion is a core or non-core proceeding when the bankruptcy court, which is required to make such finding by

---

[62]     *Id.* at 749-50 (quoting *Goggins v. Alliance Capital Mgmt., L.P.*, 279 F. Supp. 2d 228, 232 (S.D.N.Y. 2003)).  *Accord Employers Ins. of Wausau v. Fox Entm't. Group, Inc.*, 522 F.3d 271, 275 (2d Cir. 2008) (enumerating substantially the same factors).

[63]     *See* Memorandum of Law in Support of Motion of Citibank, N.A. to Withdraw the Reference to the Bankruptcy Court and to Transfer the Action to the Northern District of California ("Citibank Mem.") at 13 (citing Blocker Decl. ¶ 11).

[64]     *See id.* at 22.

17

statute, has not yet done so.[65]  Courts have also found a withdrawal to be

premature if made at an early stage in the action because a bankruptcy court can

appropriately conduct pre-trial proceedings in a non-core action even if the jury

trial must ultimately be conducted by a district court.[66]

Thus, Citibank's emphasis on the fact that the adversary proceeding is

non-core – a determination that this Court assumes for the purposes of this motion,

---

[65]     *See* 28 U.S.C. § 157(b)(3) (providing that "[t]he bankruptcy judge
shall determine, on the judge's own motion or on timely motion of a party,
whether a proceeding is a core proceeding under this subsection or is a proceeding
that is otherwise related to a case under title 11."). *See also* 6/15/09 Order in
*McHale v. Boulder Capital LLC, et al.*, 09 Civ. 5476 (noting that "'[c]ourts in this
Circuit have [required] a party to seek an initial determination from the bankruptcy
court whether a proceeding is core or non-core before moving to withdraw the
reference in part on the grounds that the proceeding is non-core.'") (quoting *In re
Enron Corp.*, 318 B.R. 273, 275 (S.D.N.Y. 2004)); *In re Formica Corp.*, 305 B.R.
147, 149 (S.D.N.Y. 2004) (noting that it had previously denied plaintiff's motion
to prevent referral to the bankruptcy court without prejudice because "any motion
to withdraw would be premature until the bankruptcy court first determined
whether the case was a core or non-core proceeding").

[66]     *See In re Enron*, 318 B.R. at 275 ("Even if the Bankruptcy Court were
to conclude that the proceeding is non-core and that [defendant] has a right to a
jury trial in district court on [plaintiff's] claims against it, however, this Court
would not withdraw the reference at this early stage of the adversary proceeding.
[The appropriateness of the] withdrawal of the reference 'for trial by jury, on
asserted Seventh Amendment grounds, will become [a question] ripe for
determination if and when the case becomes trial ready.'") (quoting *In re Kenai
Corp.*, 136 B.R. 59, 61 (S.D.N.Y. 1992)).

but declines to make[67] – and on the fact that it has refused to consent to a jury trial by the bankruptcy court are of little significance if the other considerations – promotion of judicial efficiency, decrease in delays and costs to the parties, and prevention of forum shopping – weigh overwhelmingly in favor of maintaining the action with the bankruptcy court.  Despite Citibank's protestations to the contrary, I find that withdrawal of the reference would not advance any of the other *Orion* considerations.

### 1.    **Judicial Economy**

Citibank argues that withdrawal of the reference and transfer of the proceeding to the Northern District of California will increase judicial efficiency because the allegations in the Adversary Proceeding are "nearly identical" to those in the Hunter Class Action and the other class actions, which are before Judge Ware.[68]  Citibank contends that "[w]ithdrawal of the reference and transfer to the

---

[67]    Indeed, the analysis appears far from clear.  *See McCord*, 316 B.R. at 121-22 (holding that breach of fiduciary duty actions are non-core, but sufficiently related to title 11 proceedings to be resolved by the bankruptcy court); *id.* at 122 n.11 (noting that at least one court has determined that breach of fiduciary duty claims are core because they are "matters concerning the administration of the estate" which is specifically classified as a core claim under section 157(b)(2)(A)).

[68]    Citibank Mem. at 16.

[Northern District of California] will ensure that these related cases are efficiently managed and duplicative discovery and inconsistent results do not occur."[69]

Citibank is mistaken when it asserts that the same claim is being pursued against Citibank in the Hunter Class Action and is therefore better litigated in California. The claim in this adversary proceeding is asserted by the Trustee, on behalf of the 1031 Debtors, against Citibank for aiding and abetting a breach of fiduciary duty owed by Okun to The 1031 Tax Group when he misappropriated the 1031 Debtors' funds. In contrast, the Hunter Class Action is brought on behalf of more than three hundred Exchangers against numerous banks, lenders, and law firms and alleges multiple causes of action against Citibank.[70] Although one of the causes of action against Citibank in the Hunter Class Action is aiding and abetting breach of fiduciary duty, that claim is based on the theory that the depositing of sale proceeds with the 1031 Debtors created a Trust in which the Exchangers were beneficiaries.[71] Thus, the claim is brought by the Exchangers against Citibank for aiding and abetting breach of fiduciary duty by Okun *and the 1031 Debtors*.

---

[69]     *Id.*

[70]     *See* Hunter Class Action Complaint.

[71]     *See id.* ¶ 1.

Thus, contrary to Citibank's arguments, it is not clear that the same issues will be raised in both actions. The Trustee notes additionally that choice of law rules may require the Trustee's claims to be litigated based on the law of the states in which the 1031 Debtors sustained their injury while the Exchangers' claims will be decided under the law of the states where each of the Exchangers resides.[72] Different rulings by the bankruptcy court and the Northern District of California will therefore not necessarily be inconsistent.

Citibank further argues that the existence of a Sharing Agreement between the Trustee and the Classes to coordinate litigation strategies and share in any recovery provides further evidence that the claims are identical.[73] Certainly, the Trustee's assertion that the Hunter Class Action is brought by the Class against The 1031 Tax Group and Okun appears to be a formality if in the end, The 1031 Tax Group and the Class are to share in any recovery. But even if Citibank is correct that the differences discussed above are but a mere technicality and that the Exchangers are necessarily the ultimate beneficiaries of any recovery in the

---

[72]    *See* Trustee's Memorandum in Opposition to Motion to Withdraw the Reference and to Transfer Venue ("Trustee Mem.") at 22.

[73]    *See* Citibank Mem. at 16.

adversary proceeding,[74] it cannot dispute that there are substantial differences in litigating class actions as opposed to single plaintiff actions, such as the need for class certification and other class action requirements. Indeed, the Trustee notes that no substantive progress has been made in the Hunter Class Action litigation, partly because of the procedural complexities inherent in class actions such as the filing of amended complaints, jurisdictional motions, and the JPML motion.[75]

In addition, the provisions of the Sharing Agreement with respect to coordination of discovery, depositions, and settlement negotiations will mitigate any concerns about duplication of litigation efforts and costs. Citibank points out that there is no formal court-supervised discovery coordination between these two actions and that other defendants in the Hunter Class Action will likely also wish to depose its witnesses, therefore requiring these witnesses to be subject to multiple depositions.[76]  However, there is no reason why – if discovery is proceeding simultaneously in both actions – the parties cannot agree informally to coordinate depositions.  If discovery proceeds in the adversary proceeding ahead

---

[74]     *See* Citibank N.A.'s Reply Memorandum of Law in Further Support of its Motion to Withdraw the Reference to the Bankruptcy Court and to Transfer the Action to the Northern District of California ("Citibank Reply") at 6.

[75]     *See* Trustee Mem. at 12.

[76]     *See* Citibank Reply at 7.

of the Hunter Class Action, that would only be the result of the speedier pace at
which the bankruptcy court appears to be moving, and – as will be discussed later
in this opinion – further favors maintaining the proceeding in the bankruptcy
court.

### 2.    Delays and Costs

Citibank argues that because the adversary proceeding is in the pre-
discovery stage, there will be no significant delay resulting from withdrawing the
reference and transferring the proceeding to the Northern District of California.[77]
It also contends that there will be "substantial litigation savings to Citibank if it is
not forced to defend two similar actions in two different courts on opposite ends of
the country."[78]

Citibank's contention that no delay will result from a transfer is
unpersuasive.  Judge Glenn appears to be well-versed in the facts of this case,
having presided over The 1031 Tax Group's bankruptcy petition and four other
adversary proceedings, three of which contained similar claims against other
banks.  Citibank argues that Judge Glenn's only action in this proceeding has been

---

[77]    *See* Citibank Mem. at 20.

[78]    *Id.*

23

to issue a Scheduling Order,[79] but such action should not be discounted.  As a result of issuing this scheduling order, Citibank's motion to dismiss is close to being fully briefed, and a date for oral argument on the motion has been scheduled.  The Order further provides that fact discovery is to be completed by November 2009 and requires the parties to engage in mediation.  The Trustee confirms that the parties are indeed in the midst of court-required settlement discussions.[80]

  In addition, Citibank's contention that Judge Ware is better equipped than Judge Glenn to preside over this action is not supported by the evidence it has presented.  Judge Ware was assigned the multi-district litigation in April 2009, and has only recently held the first conference in the class actions in late June

---

[79]  *See id.* at 5.

[80]  *See* Trustee Mem. at 18.  Citibank submitted a transcript of a recent conference in the bankruptcy matter of The 1031 Tax Group before Judge Glenn, pointing out that Judge Glenn is considering adjourning the oral argument scheduled on Citibank's motion to dismiss until I rule on the motion for withdrawal of the reference. *See* 8/13/09 Transcript of Conference ("8/13/09 Conf. Tr.") at 21:1-5.  Citibank argues that Judge Glenn's comment belies the Trustee's claim that Judge Glenn intends to move the proceeding forward without delay. *See* 8/20/09 Letter from Citibank to the Court ("8/20/09 Letter") at 2.  However, Judge Glenn's comment only evidences his concern that the case may be referred back to the district court and says nothing about his intentions to move the adversary proceeding forward if this Court decides to deny Citibank's motion to withdraw the reference.  I have no reason to believe – now that I have denied this motion – that he will move the case any slower than he has done to date.

2009. As mentioned, litigating class actions is fraught with myriad procedural issues that need not be dealt with in this proceeding, but which this proceeding will need to account for if it is joined as a tag-along to the class actions. If anything, withdrawal of the reference and transfer to the Northern District of California may serve to delay the progress of this proceeding.

Citibank's assertion that costs will be saved if both actions are litigated in the Northern District of California is belied by the facts. Citibank notes that the three Citibank employees mentioned in the Complaint are located in Connecticut,[81] which is closer to New York than to California. In addition, consideration is given to *both* parties' costs, and the Trustee notes that New York is a convenient forum; not only is counsel for the estate located here, but so are "the Trustee's professionals and the vast bulk of documents relating to the 1031 Debtors."[82] It appears therefore that costs would not be saved if the reference was withdrawn and the proceeding was transferred.

### 3. Forum Shopping

Finally, Citibank contends that it cannot be accused of engaging in forum shopping because it simply requests that the action be transferred to the

---

[81]     *See* Citibank Mem. at 26.

[82]     Trustee Mem. at 25.

25

district in which it is a defendant in a related matter and in which the Class, with

the Trustee's support, had advocated for centralization of the multi-district

proceedings.[83]  While it is true that Citibank does not request a transfer to "some

random forum with no connection to this matter,"[84] the only differences between

allowing the action to proceed in this district rather than transferring it to

California is that this district is more convenient for both parties – which favors

maintaining the action in this district – and the bankruptcy court has been

proceeding at a speedier pace.  I am therefore skeptical of Citibank's motives for

moving to withdraw the reference and transfer the action and find persuasive the

Trustee's argument that Citibank is merely looking to delay the proceedings.[85]

Indeed, the Trustee notes that Citibank had already requested a stay of the

proceedings with the bankruptcy court while it pursued its withdrawal petition and

a conditional transfer order from the JPML, but the bankruptcy court denied that

request, preferring instead to move ahead with the case while the petition is

pending before this Court.[86]

---

[83]     *See* Citibank Mem. at 21.

[84]     *Id.*

[85]     *See* Trustee Mem. at 28.

[86]     *See id.*; 6/23/09 Transcript of Conference Before Judge Glenn, Ex. 2
to Declaration of Michael S. Devorkin ("Devorkin Decl."), Trustee's counsel, at

26

### 4.    Uniform Administration of Bankruptcy Laws

The only other *Orion* factor that does not favor maintaining the action in bankruptcy court is that the adversary proceeding does not turn on any bankruptcy laws and therefore will not affect the uniform administration of bankruptcy laws.  However, although this factor does not favor maintenance of this action in the bankruptcy court, neither does it compel the transfer of the proceeding to another district.  I therefore find this factor to be neutral and conclude that the *Orion* factors, on balance, weigh in favor of maintaining the proceeding in the bankruptcy court.  Citibank's motion to withdraw the reference to the bankruptcy court is denied.[87]

---

36:8-37:14.

[87]    Citibank argues that Judge Glenn himself has opined that if a plan of reorganization is confirmed in the case, "I'm not sure it makes a whole lot of sense from a standpoint of judicial efficiency to have parallel claims arising out of the same facts pending and being litigated here and being litigated before Judge Ware."  8/20/09 Letter at 1-2 (quoting 8/13/09 Conf. Tr. at 33:16-19). However, Judge Glenn made this comment at a hearing in the bankruptcy matter without knowledge and consideration of the parties' arguments on this motion.  Although it is generally preferable for one court to preside over claims against the same party based on similar facts, judicial efficiency would not be significantly advanced here.

Citibank further contends that this Court should follow several other courts that have granted permissive withdrawal motions on the ground that related actions involving similar facts and issues were being litigated in the district court. However, in all of the cases to which Citibank cites, the court relied on other

27

## B.    Motion to Transfer

Because I decline to withdraw the reference to the bankruptcy court, I

also deny Citibank's motion to transfer the case to the Northern District of

California.  Indeed, in determining that the withdrawal of reference motion should

be denied, I also necessarily held that the adversary proceeding would be more

conveniently litigated in the bankruptcy court.  In addition, Citibank has failed to

present any evidence – much less *clear and convincing* evidence – of the

inconvenience it would suffer from having to litigate one action in California and

the other in New York.  Even if Citibank's unsworn assertions could be

considered evidence, they nevertheless weigh in favor of keeping the action here:

---

factors in addition to overlapping facts and issues to support its decision.  *See In re Adelphia Commc'ns Corp. Secs. and Derivative Litig.*, No. 03 MDL 1529, No. 05 Civ. 9050, No. 05 Civ. 9250, No. 05 Civ.9285, 2006 WL 337667, at *5 (S.D.N.Y. Feb. 10, 2006) (withdrawing the reference in part because a mediation process was already underway in the district court)*; In re Chateaugay Corp.*, No. 00 Civ. 9429, 2002 WL 484950, at *8 (S.D.N.Y. Mar. 29, 2002) (granting the withdrawal motion in part because maintaining the action in bankruptcy court would promote forum shopping by the plaintiff); *In re Complete Mgmt., Inc.*, No. 02 Civ. 1736, 2002 WL 31163878, at *3 & *3 n.5 (S.D.N.Y. Sept. 27, 2002) (granting withdrawal in part because of judicial economy and the district court's familiarity with the facts); *Mishkin v. Ageloff*, 220 B.R. 784, 800 (S.D.N.Y. 1998) (noting that both actions subject to withdrawal were in the early stages of litigation and no motions had been filed, therefore further supporting granting of withdrawal motion)*; Wechsler v. Squadron, Ellenoff, Plesent, & Sheinfeld LLP*, 201 B.R. 635, 641 (S.D.N.Y. 1996) (granting withdrawal in part to prevent forum shopping).  None of these factors is present here.

its witnesses are based in Connecticut, which is much closer to New York than California, and any documentary evidence in its possession is likely to be located in New York, where the three employees worked at the time of the alleged misconduct.

In addition, the Trustee has filed a declaration by its counsel attesting that the witnesses it intends to call are nearer to New York and the majority of the documents that are pertinent to this action are located in New York.[88] It also notes that its counsel and accountants are in New York, and that the offices the 1031 Debtors were located in this state and in Virginia.[89] It appears that transfer would prove to be an enormous burden on the Trustee. It is also unpersuasive that Citibank, a national bank of substantial resources, would suffer much greater inconvenience from merely having to transport some of its witnesses to California for depositions than the Trustee would incur if he was forced to litigate the entire action in California.[90] Finally, as noted, the bankruptcy court has a greater

---

[88]     *See* Devorkin Decl. ¶¶ 35, 37.

[89]     *See id.* ¶¶ 35-37.

[90]     Citibank argues that a determination by this Court that it would be more convenient to litigate the proceeding in this district would amount to a reconsideration of the JPML's ruling in its Transfer Order. *See* Citibank Reply at 10. However, the JPML simply decided to centralize the actions in California because one of the class actions had already been filed there, and declined the

29

familiarity with the facts of the case, and specifically, the claims in the instant action.

## V.    CONCLUSION

Because withdrawal of the reference may be more appropriately made at a later time in the adversary proceeding, Citibank's motion for withdrawal of the reference is denied with leave to renew. Citibank's motion to transfer the proceeding to the Northern District of California is denied with prejudice. The Clerk of the Court is directed to close this motion (document no. 1) and this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            August 24, 2009

---

defendants' request to centralize the proceedings in the Southern District of New York because there could be a delay while new judges are assigned to the cases. *See* Transfer Order at 2. It made no finding that the Northern District of California was more convenient to the parties than the Southern District of New York.